# United States Court of Appeals for the Federal Circuit

―――――――

## IN RE:  DONALD K. FOREST,
*Appellant*

―――――――

2023-1178

―――――――

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in No. 15/391,116.

―――――――

Decided:  April 3, 2025

―――――――

DON FOREST, Bryn Mawr, PA, pro se.

PETER JOHN SAWERT, Office of the Solicitor, United States Patent and Trademark Office, Alexandria, VA, for appellee Coke Morgan Stewart.  Also represented by KAKOLI CAPRIHAN, AMY J. NELSON.

―――――――

Before TARANTO, SCHALL, and CHEN, *Circuit Judges.*

CHEN, *Circuit Judge.*

Donald Forest submitted U.S. Patent Application No. 15/391,116 ('116 application), entitled "Apparatus for Selecting from a Touch Screen," to the United States Patent and Trademark Office (Patent Office) on December 27, 2016.  The Patent Trial and Appeal Board affirmed in part the examiner's rejection of certain claims of the '116 application under 35 U.S.C. § 103 and nonstatutory double

patenting. *See Ex parte Forest*, No. 2021-003780, 2022 WL 4234201, at *26 (P.T.A.B. Sept. 12, 2022). Mr. Forest appeals.

The '116 application claims priority, through a chain of earlier-filed patent applications, to an application filed on March 27, 1995—meaning, if the '116 application were to issue as a patent, then its expiration date would be twenty years later in 2015. *See* 35 U.S.C. § 154(a)(2). Mr. Forest does not dispute that he filed his '116 application more than a year *after* any resulting patent's 2015 expiration date. The Patent Office raises a threshold issue it characterizes as a jurisdictional matter: it contends that, given the circumstances, Mr. Forest has no personal stake in this appeal because he cannot be granted any enforceable rights by a patent grant with zero term. In response, Mr. Forest argues that he would still acquire "provisional rights" under 35 U.S.C. § 154(d) if the Patent Office issues him an expired patent, but he does not contest the jurisdictional consequence if his understanding of section 154 is incorrect. Because we disagree with Mr. Forest's reading of the statute, we *dismiss* the appeal.

I.

Under 35 U.S.C. § 154(a), every patent grants to the patentee "the right to exclude others from making, using, offering for sale, or selling the invention throughout the United States." 35 U.S.C. § 154(a)(1). These exclusionary rights begin when the patent issues and end twenty years after the application date or applicable priority date.[1] *Id.* § 154(a)(2)–(3).

---

[1]    This expiration date assumes there is no patent term adjustment, patent term extension, or terminal disclaimer, *see* 35 U.S.C. §§ 154(b), 156, 253(b)—none of which is applicable in this appeal.

Under 35 U.S.C. § 154(d), titled "Provisional Rights," a patent grant also confers an additional, but more limited, right—the right to obtain a reasonable royalty from any person who "makes, uses, offers for sale, or sells in the United States the invention as claimed in the published patent application." *Id.* § 154(d)(1)(A)(i). These provisional rights run from when the application is published until the patent issues. *Id.* § 154(d)(1). A patent application generally publishes eighteen months after its filing date. *Id.* § 122(b). Provisional rights are thus less robust than section 154(a) exclusionary rights, and they are "provisional" in the sense that the rights end and are replaced by the statutory exclusionary rights once a patent issues. Importantly, provisional rights do not materialize until the Patent Office issues a patent.

To illustrate a typical patent-prosecution, let's assume a hypothetical application was filed on January 1, 2000, published on July 1, 2001, and issued on January 1, 2005. In this example, upon issuance of the patent, the patentee would be awarded provisional rights under section 154(d) effective from July 1, 2001, to January 1, 2005, and would be awarded exclusionary rights under section 154(a) from January 1, 2005, through January 1, 2020.[2] Thus, the more-limited provisional rights precede the exclusionary rights, and the provisional rights compensate for some of the term "lost" due to the amount of time it took the patent to issue. And no rights under the patent extend past twenty years from the application filing date.

This appeal presents an atypical case: Based on the date of the application to which he claims priority, Mr. Forest applied for—and would not be granted—a patent until after the patent's expiration date. Mr. Forest would therefore never receive any exclusionary rights because the

---

[2]    Again, this expiration date assumes no patent term adjustment, patent term extension, or terminal disclaimer.

patent would issue after the twenty-year term has expired.[3]  *See* 35 U.S.C. § 154(a)(2).  Effectively, Mr. Forest asks the Patent Office to grant him an expired patent.

## II.

The Patent Office contends we can reject Mr. Forest's appeal without needing to address the merits of the Board's decision because any patent that would issue from the '116 application would be expired, giving Mr. Forest no patent rights.  "[A]t all stages of litigation, a plaintiff must maintain a personal interest in the dispute." *Apple Inc. v. Qualcomm Inc.*, 17 F.4th 1131, 1137 (Fed. Cir. 2021) (citation omitted).  According to the Patent Office, Mr. Forest has no interest in this appeal.[4]

Mr. Forest does not dispute that his patent, if granted, would have no exclusionary rights, but he argues that his patent, if granted, would receive provisional rights.  In Mr. Forest's view, because provisional rights run from the date of publication to patent issuance, the patentee is always entitled to provisional rights—even if the patent issues ten, twenty, or even thirty years or longer after the patent's expiration date.  What's more, according to Mr. Forest, the twenty-year patent term codified in 35 U.S.C. § 154(a)(2) has no bearing on the provisional-rights term.  Under this view, the patentee could actually benefit from having a patent issue after its expiration date because the patent's provisional-rights term would extend beyond the patent's twenty-year term.  Indeed, if we were to adopt

---

[3]    We recognize that a patent does not receive the full twenty-year term because of the temporal delay from the application to the issuance of the patent.  We use the phrase "twenty-year term" for simplicity.

[4]    Mr. Forest has identified no potential interest other than receiving a patent with the patent rights afforded by section 154.

Mr. Forest's understanding of the statute, nothing in section 154 would stop him from receiving an expired patent with provisional rights while still pursuing another continuation application to gain a second round of provisional rights covering a subsequent time period through a later, second expired patent.

This appeal therefore turns on a single question of statutory interpretation: Under 35 U.S.C. § 154, does a patent include the grant of provisional rights when the patent would issue after its expiration date (and thus would issue without any exclusionary rights)? For the following reasons, we hold that provisional rights are granted only when a patent would issue with exclusionary rights (i.e., would issue before its expiration date).

The Supreme Court has summarized our role in statutory interpretation as follows:

> It is . . . our task to determine the correct reading of [the relevant statute]. If the statutory language is plain, we must enforce it according to its terms. But oftentimes the "meaning—or ambiguity—of certain words or phrases may only become evident when placed in context." So when deciding whether the language is plain, we must read the words "in their context and with a view to their place in the overall statutory scheme." Our duty, after all, is "to construe statutes, not isolated provisions."

*King v. Burwell*, 576 U.S. 473, 486 (2015) (citations omitted); *see also Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 n.4 (2024) ("[S]tatutes can be sensibly understood only 'by reviewing text in context.'" (quoting *Pulsifer v. United States*, 601 U.S. 124, 133 (2024))).

Section 154(d)(1) provides:

(d) Provisional Rights.—

(1) In general.—In addition to other rights provided by this section, a patent shall include the right to obtain a reasonable royalty from any person who, during the period beginning on the date of publication of the application for such patent under section 122(b) . . . and ending on the date the patent is issued—

> (A)(i) makes, uses, offers for sale, or sells in the United States the invention as claimed in the published patent application or imports such an invention into the United States; or
>
> (ii) if the invention as claimed in the published patent application is a process, uses, offers for sale, or sells in the United States or imports into the United States products made by that process as claimed in the published patent application; and
>
> (B) had actual notice of the published patent application and, in a case in which the right arising under this paragraph is based upon an international application designating the United States that is published in a language other than English, had a translation of the international application into the English language.

35 U.S.C. § 154(d).

The title of this subsection is "Provisional Rights." The word "provisional" is an adjective defined as "serving for

the time being" or "temporary." *Provisional*, MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/provisional (last visited Mar. 14, 2025). This definition suggests that provisional rights are temporary, placeholder rights existing for only an interim period. That is, provisional rights exist for a temporary period of time until some other right comes into effect and replaces them. The only other right identified in section 154 is exclusionary rights. *See Oil States Energy Servs., LLC v. Greene's Energy Grp., LLC*, 584 U.S. 325, 338 (2018) ("As a public franchise, a patent can confer only the rights that 'the statute prescribes.'" (citation omitted)). The title of section 154(d) thus suggests that provisional rights do not exist simply in a vacuum but instead necessarily precede exclusionary rights, and exclusionary rights are available only until the patent expires, *see* 35 U.S.C. § 154(a)(2). For the provisional rights to precede the exclusionary rights, then, the provisional rights would have to be granted to a patent that issues before the patent expires. Were we to conclude otherwise, as Mr. Forest seeks, section 154(d)'s provisional rights would never be a temporary, interim right replaced by a different right—the traditional exclusionary right. That reading contradicts the plain meaning of "provisional." The title therefore supports that provisional rights can be granted to only a patent that issues before its expiration date.

Although "titles and headings are permissible indicators of meaning," Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 221 (2012), we recognize "they cannot undo or limit that which the text makes plain," *Bhd. of R.R. Trainmen v. Balt. & Ohio R.R. Co.*, 331 U.S. 519, 529 (1947); *see also Carter v. United States*, 530 U.S. 255, 256 (2000) ("[T]he title of a statute is of use only when it sheds light on some ambiguous word or phrase in the statute itself."). Here, however, the statutory text also supports this understanding that provisional rights precede the exclusionary rights and therefore are

available only when a patent issues before its expiration date.

For one, provisional rights attach to "the invention as claimed in the published patent application," 35 U.S.C. § 154(d)(1)(A)(i)–(ii), whereas exclusionary rights attach to the issued patent, 35 U.S.C. § 154(a)(1). The published patent application necessarily precedes the issued patent.[5] And if the published patent application precedes the issued patent, then the rights based upon the published patent application (the provisional rights) should likewise precede the rights based upon the issued patent (the exclusionary rights).

But more on point, certain words of the statute would be read out of the text if a patent could issue with provisional rights but without exclusionary rights. "In construing a statute we are obliged to give effect, if possible, to every word Congress used." *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339 (1979). In enacting section 154(d), Congress specified that provisional rights are granted "[i]n addition to other rights provided by this section." 35 U.S.C. § 154(d)(1). As mentioned, the only other rights enumerated in section 154 are the exclusionary rights. It follows that provisional rights are conferred with and "in addition to" exclusionary rights. If no exclusionary rights can be granted (because, as in this case, the application is well past the expiration date), then so, too, the attendant provisional rights are unavailable. Put another way, there are no "other rights" the provisional rights can be "in addition to."

This understanding that provisional rights precede, are replaced by, and are granted with exclusionary rights

---

[5]    Under 35 U.S.C. § 122(b)(2)(A)(i), the application will not publish if it is "no longer pending" because the patent was issued prior to the would-be publication date.

is also in accord with how patent examination practice typically works. As in our "typical example" described above, patents generally issue before their expiration date. Indeed, we are unaware of any example of a patent issuing after its expiration date. So in the "typical example" a patent is granted with a period of provisional rights (assuming the application was published) followed by a period of exclusionary rights.

This understanding that provisional rights are rights that precede and are replaced by exclusionary rights also comports with other uses of "provisional" in patent law and Title 35, Part II of the U.S. Code. For instance, a patent applicant can submit a "provisional application" under 35 U.S.C. § 111(b)(1) before it submits a "written application," which is commonly referred to as a "non-provisional application," under 35 U.S.C. § 111(a)(1). "As a part of the Uruguay Round Agreements Act, the Patent Statute was amended to allow applicants for United States patents to file provisional applications that could provide the priority date for a non-provisional utility application filed within one year of the provisional." *New Railhead Mfg., L.L.C. v. Vermeer Mfg. Co.*, 298 F.3d 1290, 1294 (Fed. Cir. 2002) (citing 35 U.S.C. § 111(b)). Thus, in the context of section 111, a provisional application is a temporary, stand-in application that precedes the non-provisional application and does not lead to a conferral of rights on the patentee unless a patent issues from the subsequent non-provisional application.

Mr. Forest's only argument to the contrary is that the text is clear and must be given effect. Specifically, he contends that the statute explicitly provides that provisional rights "begin[] on the date of publication of the application for such patent" and "end[] on the date the patent is issued." Appellant's Reply Br. 9; 35 U.S.C. § 154(d)(1). According to Mr. Forest, applying the text as written means that the provisional rights are granted for that period,

regardless of how much time elapses between publication and issuance.

This argument in our view engages in an overly narrow statutory analysis. Mr. Forest asks us to focus our analysis on only two phrases marking the beginning and end of the provisional-rights term. But even if we assume that the phrases "begin[] on the date of publication of the application for such patent" and "end[] on the date the patent is issued" are unambiguous, "[o]ur duty . . . is to construe statutes, not isolated provisions"—let alone isolated phrases within those provisions. *King*, 576 U.S. at 486 (internal quotation marks and citation omitted). "So when deciding whether the language is plain, we must read the words in their context and with a view to their place in the overall statutory scheme." *Id.* (internal quotation marks and citation omitted). As described above, the statute, when read in context, dictates that provisional rights must be granted with and precede the grant of exclusionary rights.

We also note that a patent's term is a fundamental aspect of patent law. The Constitution mandates that patents be granted only "for limited Times." U.S. Const. art. I, § 8, cl. 8. In the modern statute, Congress effectuated that constitutional mandate by explicitly providing for a term "beginning on the date on which the patent issues and ending 20 years from the" application date or applicable priority date. 35 U.S.C. § 154(a)(2)–(3). That statutory command clearly presupposes that a patent term's beginning date occurs *before* its ending date. But that presupposition is not present here. In effect, Mr. Forest seeks some form of patent rights that go beyond the statute's twenty-year end date, but we have explained that the Patent Office "may not grant . . . a patent right extending beyond the statutorily authorized term." *Institut Pasteur & Universite Pierre Et Marie Curie v. Focarino*, 738 F.3d 1337, 1344 (Fed. Cir. 2013) (citing 35 U.S.C. §§ 154, 271(a)).

Mr. Forest argues that provisional rights are an exception to a patent's twenty-year term. In fact, he claims it is an unbounded exception that lasts from the date the patent application is published until the patent issues—no matter how long that time period is. Mr. Forest presents a "fundamentally surprising" interpretation pertaining to a key, constitutionally driven component of the grant of a patent, so we would have expected Congress to have clearly addressed the issue if we were to adopt his interpretation. *Jones v. Hendrix*, 599 U.S. 465, 492 (2023); *see also id.* ("Typically, we find clear-statement rules appropriate when a statute implicates historically or constitutionally grounded norms that we would not expect Congress to unsettle lightly."); *cf. Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001) ("Congress, we have held, does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.").

Yet, Congress has not provided a clear indication that provisional rights can exceed a patent's twenty-year term. In fact, as explained above, the statutory text suggests the opposite. And nothing in the legislative history indicates otherwise. The only legislative history the parties identified are statements made by patent stakeholders to Congress rather than statements made by Congress. But each of those statements support that provisional rights would not extend beyond the patent's twenty-year term. *See, e.g.*, *The Patent System Harmonization Act of 1992: Joint Hearing on S. 2605 and H.R. 4978 Before the Subcomm. on Pats., Copyrights & Trademarks of the S. Comm. on the Judiciary and the Subcomm. on Intell. Prop. & Jud. Admin. of the H. Comm. on the Judiciary*, 102nd Cong. 398 (1993) ("The combination of expiration at 20 years from the initial U.S. filing and provisional rights will maintain the current length of protection for inventions, and eliminate the possibility that exists under current law of having patent terms extend for a period much longer than 20 years after

the invention is commercialized."); *Oversight of the Patent and Trademark Office: Hearing on S. 1854 Before the Subcomm. on Pats., Copyrights & Trademarks of the S. Comm. on the Judiciary*, 103rd Cong. 40 (1995) ("Eighteen-month opening or publication with provisional rights complements the 20-year term measured from filing. A reasonable royalty after publication may compensate the patentee for time lost from the 20-year patent term . . . ."); *Patents Legislation: Hearings on H.R. 359, H.R. 632, H.R. 1732, and H.R. 1733 Before the Subcomm. on Cts. & Intell. Prop. of the H. Comm. on the Judiciary*, 104th Cong. 260 (1996) ("The opportunity for provisional royalties is another positive aspect of publication . . . [and] means that an inventor's right to royalties will be a full 18.5 years regardless of when the patent issues.").

## III.

For the foregoing reasons, this appeal is dismissed.

### DISMISSED

COSTS

No costs.